spoken of in this letter, as fixing merely the rate of commissions allowed for collecting and remitting money, distinct from the extra trouble of an agent in superintending, recovering, and preserving the property of the principal. The duties are perfectly distinct; and no rate of compensation, which might be just for the performance of one of these duties, could possibly furnish a rule in respect to the other.

Nothing farther seems to have passed between the parties on the subject of compensation, (except a repetition of the general assurance before made, that the complainants would generously remunerate the defendant for his services,) until the 2d November, 1788, when the defendant, in his letter of that date, referring to the complainants' letter of the 21st July, 1784, and repeating what they had then said, as to this matter, draws the distinction between the services which he was called upon to render, and those ordinary duties which belong to an agent, under the character of a collector;—and he suggests the idea of a compensation, proportionable to the nature of his services, in the way of a per diem allowance. This mode of compensating the defendant for his services, prior to the 1st January, 1789, was finally adopted and fixed by the complainants, at seven dollars for each day the defendant had been employed in their service; which being more than the defendant had demanded, they express, in their letter of the 25th March, 1790, a hope that their liberality on this occasion, will be considered by the defendant as an earnest of their wish to reward him fully for his future services. In 1788, the defendant received from the complainants full powers to sell their lands in Pennsylvania and New Jersey; but the difficulties in which the former were entangled, precluded him from selling them until 1792, when the price was fixed by arbitration, on terms very beneficial to the complainants at that time. The purchase money for these lands was paid by instalments; which began in 1793, and continued until the whole was discharged; amounting to a very large sum of money. These sums, as fast as they were received, were regularly remitted to the complainants; and the defendant has charged in his account a commission of ten per cent. on all such sums; but without claiming any other allowance from the 1st January, 1793, on account of these lands; his trouble having ceased in respect to them, by the award in 1792. The New Jersey lands were unsalable, except to an inconsiderable amount; but they continued to demand the care of the defendant, for their preservation against lawless depredation and injury. The defendant has consequently charged in his account, an allowance of seven dollars for every day employed in superintending the interest of the complainants on these days; and also a commission on the rents collected by him, and on the sums received and remitted by him, on the few sales it was in his power to effect. These claims, the court is of opinion, are well founded, and ought to be allowed upon the principle of a quantum meruit, and the absence of any contract on the subject. The defendant admits an error in his account to the amount of —— dollars; and the court is of opinion, that his charge of a sum per day, for preparing his own account, and the papers of the estate, and delivering them over to his successor in 1802, ought not to be allowed; for these were his duties. The decree will be for the balance, which will remain, after deducting from it the balance now appearing to the debit of complainants, by the defendant's account; with interest at seven per cent. from the 1st January, 1803, and the costs.

## Case No. 3,066.

### COMMON COUNCIL v. SWANN.

[Cited in Alexandria v. Mandeville, Case No. 184. Nowhere reported; opinion not now accessible.]

### COMMON COUNCIL OF.

[Note. Additional cases cited under this title will be found arranged in alphabetical order under the names of the municipalities; e. g. "Common Council of Alexandria v. Brockett. See Alexandria v. Brockett."]

## Case No. 3,067.

### COMMONWEALTH v. MURPHY.

[Case cited as from 3 Pac. Coast Law J. 390, is nowhere reported.]

## Case No. 3,068.

### COMMONWEALTH v. ROGERS.

[This is a state case, and is reported in 10 Pittsb. Leg. J. 178.]

COMMONWEALTH (TAYLOR v.). See Cases Nos. 13,787 and 13,788.

COMMONWEALTH INS. CO. (DUNN v.). See Case No. 4,174.

COMMONWEALTH INS. CO. (ROBINSON v.). See Case No. 11,949.

COMMONWEALTH NAT. BANK (WHITE v.). See Case No. 17,544.

### COMMONWEALTH OF.

[Note. Cases cited under this title will be found arranged in alphabetical order under the names of the commonwealth; e. g. "Commonwealth of Pennsylvania v. Artman. See Pennsylvania v. Artman."]